ORAL ARGUMENT NOT YET SCHEDULED

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Environmental Defense Fund,<br><br>Petitioner,<br><br>v.<br><br>Lee Zeldin, in his official capacity as Administrator, U.S. Environmental Protection Agency; and U.S. Environmental Protection Agency,<br><br>Respondents. | No. 26-1152 |

**EPA's Opposition to Abeyance Motion**

In yet another challenge to an EPA rule under the Clean Air Act, Petitioner, after filing suit, swiftly moves for abeyance. The motion is part of a broader strategy by Petitioner and its allies to delay litigation over Clean Air Act rules. That strategy, however, is at war with the Act, which favors prompt judicial review and resolution of rule challenges.

Worse still, Petitioner's justification for abeyance is nothing more than speculation about what EPA might do in a future rulemaking. It is always possible

1

for an agency to one day revise a challenged rule. But that possibility does not warrant abeyance over EPA's objection.

Abeyance would also harm EPA and regulated entities by unnecessarily keeping a cloud of legal uncertainty—for months or even years—over the challenged rule as they continue to implement and comply with it. Besides, having trumpeted the filing of this lawsuit and publicly accused EPA of illegal conduct, Petitioner now needs to prove those accusations. If it is not prepared to do so, it is welcome to dismiss the petition for review. Otherwise, the Court should deny the abeyance motion and order the parties to propose a schedule for merits briefing.

## Background

### I.    The Clean Air Act.

The Clean Air Act directs EPA to regulate certain categories of stationary sources. 42 U.S.C. § 7411(b)(1). For new sources in such a category, EPA must promulgate standards of performance. *Id.* § 7411(b)(1)(B). In certain situations, these standards trigger EPA's duty to address emissions from existing sources in the category. *Id.* § 7411(d)(1). EPA does so by requiring states to submit plans to the agency for approval detailing how they will develop, implement, and enforce their own standards for in-state sources under EPA guidelines. *Id.* § 7411(d)(1)-(2).

Once a Section 7411 rule is promulgated, litigants have 60 days from the rule's publication in the Federal Register to petition this Court for review. *Id.* § 7607(b)(1). Judicial review is limited to the administrative record. *Id.* § 7607(d)(7)(A). And though the Act allows parties to ask EPA for reconsideration of the rule in certain situations, a pending reconsideration request does not affect the finality of the rule under review. *Id.* § 7607(d)(7)(B), (b)(1).

## II.    The 2026 rule.

In March 2024, EPA promulgated a rule under Section 7411 that addressed methane and other emissions from new and existing oil and natural-gas sources. 89 Fed. Reg. 16820 (Mar. 8, 2024). This "uniquely large" and complex source category has "hundreds of thousands" of existing sources. *Id.* at 17000/1.

Soon after promulgating that rule, EPA received a number of reconsideration petitions. 90 Fed. Reg. 3734, 3738/1 (Jan. 15, 2025). In May 2024, EPA granted reconsideration on two discrete, narrow technical aspects of the 2024 rule: (1) certain monitoring and sampling requirements for net heating value, which is a measure of combustibility, and (2) temporary flaring provisions for associated gas in certain situations. 91 Fed. Reg. 18056, 18060/3 (Apr. 9, 2026).[1]

---

[1] "Associated gas" refers to natural gas, which contains mostly methane and volatile organic compounds, that is released when drilling primarily for oil.

After notice and comment, earlier this year EPA finalized reconsideration on these two issues by making certain technical changes. *Id.* at 18056/1; 90 Fed. Reg. at 3734/1. Petitioner timely challenged this 2026 rule—which addresses only net heating value and associated gas—under Section 7607(b)(1). Petition for Review (June 8, 2026). A day later, Petitioner announced its lawsuit in a press release castigating EPA for the rule.[2]

At the same time, EPA has been separately reconsidering the 2024 rule to advance the President's executive orders and policy priorities.[3] EPA has not yet proposed action on this reconsideration.

### Argument

The Clean Air Act is designed to ensure prompt litigation and resolution of rule challenges. Petitioner has not explained how its request—delaying litigation on account of pure speculation about what EPA might do in a future rule—overcomes the Act's preference for prompt judicial review. Abeyance, moreover,

---

[2] *See* https://www.edf.org/media/edf-files-lawsuit-opposing-trump-epas-weakening-methane-standards.

[3] *See* https://www.epa.gov/newsreleases/trump-epa-announces-oooo-bc-reconsideration-biden-harris-rules-strangling-american; Executive Order 14154 (Unleashing American Energy), 90 Fed. Reg. 8353 (Jan. 29, 2025); Executive Order 14192 (Unleashing Prosperity Through Deregulation), 90 Fed. Reg. 9065 (Feb. 6, 2025). Separately, EPA delayed certain compliance deadlines set by the 2024 rule when it became evident that the requirements would be harder to implement than expected. 90 Fed. Reg. 35966 (July 31, 2025); 90 Fed. Reg. 55671 (Dec. 3, 2025); *Env't Def. Fund v. Zeldin*, Case No. 25-1275 (D.C. Cir.).

would harm EPA and others by unnecessarily prolonging the cloud of legal uncertainty over the 2026 rule. Finally, Petitioner's request, part of a broader strategy to delay litigation over EPA's rules, threatens to pause this lawsuit for much longer than just the few months sought here. The Court should deny the request.

## I.     Congress designed the Clean Air Act to ensure prompt judicial review.

Congress set up the Clean Air Act to ensure prompt review and resolution of challenges to EPA rules like the 2026 rule.

Nowhere is that intent more evident than the judicial-review deadline. Whereas the default deadline to challenge agency actions is six years, here Congress limited that period to 60 *days*. *Compare* 28 U.S.C. § 2401(a) *with* 42 U.S.C. § 7607(b)(1). Congress thus envisioned that in general, litigation over Clean Air Act challenges should occur months, not years, after a rule is finalized.

Elsewhere in Section 7607, Congress smoothed the path to merits litigation using provisions that minimize the need for preliminary skirmishes like disputes over venue and the record for review. So, for example, Section 7607(b)(1) specifies that challenges to nationally applicable regulations like the 2026 rule are reviewable only in this Circuit, and Section 7607(d)(7)(A) specifies the content of the record for judicial review.

In addition, Congress made clear that a reconsideration request cannot derail litigation. It expressly rejected the general rule that a pending reconsideration request makes an otherwise final agency action unreviewable: Such a request, Section 7607(b)(1) says, "shall not affect the finality of…[a] rule" that is otherwise final. *See Util. Air Regul. Grp. v. EPA*, 744 F.3d 741, 746 (D.C. Cir. 2014) (discussing Clean Air Act exception and congressional intent). This language, Congress explained when it amended the Act in 1990, is "designed to ensure prompt judicial review of final actions by EPA" and to "assure" that a pending reconsideration request "does not delay that review." S. Rep. No. 101-228, at 3755 (1989).

As we show below, delaying litigation over the 2026 rule as Petitioner urges would conflict with this statutory design and congressional intent.

## II.    Petitioner's request—based on pure speculation—would thwart congressional intent.

Petitioner's abeyance request is premised on nothing but speculation about what EPA might do in the future. That is not enough to overcome the Clean Air Act's preference for prompt merits litigation.

The ongoing reconsideration cited by Petitioner, announced in March 2025, examines the 2024 rule. *See supra* n. 3. But there is no proposal setting forth what EPA might want to change in that rule or whether it might address other matters— indeed, EPA remains hard at work on the content of a proposal. Nor has EPA

6

shared any details about the proposal or otherwise previewed its plans. And no one has requested reconsideration of the 2026 rule itself.

So Petitioner is left to speculate about what EPA might do on reconsideration and whether it might further address the two narrow technical issues in the 2026 rule. The most Petitioner can say is that the monitoring requirements for net heating value "could be" at issue in the reconsideration and that the associated-gas flaring requirements "may" be too. Mot. 7.

Perhaps sensing that this sort of guesswork cannot support abeyance, Petitioner tries to bolster its position with a smattering of statements from EPA's Administrator. *Id.* at 5, 8. But those statements refer to reconsideration in general terms. They offer no promises about specific issues that would be addressed on reconsideration.

Pure speculation about future EPA action, however, cannot justify abeyance, especially when Congress set up the Clean Air Act to ensure prompt litigation and resolution of rule challenges. *See supra* Arg. § I. That is true even if (unlike here) a challenged rule is itself the subject of a reconsideration request. *See* 42 U.S.C. § 7607(b)(1).

Indeed, if speculation about future rulemakings were enough to abate litigation, then the very concept of judicial review would come under siege. Petitioners could always delay litigation by speculating about what EPA might do

in the future. And EPA could shield its rules from litigation simply by suggesting that it might promulgate a future rule that could overlap with the disputed one. *Cf. Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012) (disagreeing that EPA should be able to "stave off judicial review…simply by initiating a new proposed rulemaking that would amend the [disputed] rule in a significant way"). That outcome would not only conflict with the Clean Air Act's design but also undermine the judiciary's role in adjudicating disputes.

### III.    Abeyance would prejudice EPA and others.

Delaying resolution of this dispute would harm regulated entities, EPA, and even this Court. That harm cannot be justified merely by Petitioner's preference for abeyance.

By ensuring prompt review in the months rather than years after a rule is finalized, the Clean Air Act sought to bring certainty to regulated entities (and the public at large). An abeyance would achieve the opposite. To be sure, during abeyance, the 2026 rule would remain in effect. Mot. 9. But until the petition is adjudicated, regulated entities must continue to devote resources to complying with the challenged rule—all the while not knowing whether the rule would one day be vacated by this Court. This is precisely the kind of litigation uncertainty that the statute disfavors.

EPA, too, would suffer harm from that litigation uncertainty. For one thing, a court decision would bring clarity and help EPA better gauge how to address similar issues. Leaving the 2026 rule in judicial limbo, by contrast, would make it hard for EPA to plan and implement its regulatory program.

For another, abeyance would prevent EPA from clearing its name now. Petitioner has publicly branded the 2026 rule "illegal." *See supra* n.2. And now it wants to let that accusation hang over EPA without being put to the proof. EPA should have the chance to respond to Petitioner's accusation with record evidence and receive a court decision.

Abeyance could also affect the relief available to this Court should it grant the petition for review. As this Court has recognized, vacatur, if disruptive, may not be a proper remedy. *See Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150 (D.C. Cir. 1993). And the longer a challenged rule remains in place, the more likely it is that vacatur will be disruptive. That is especially true of a large and complex source category like the oil and gas industry. A prompt resolution would thus reduce the likelihood of disruption should the Court need to consider remedy here.

Petitioner, for its part, paints abeyance as totally harmless—an unusual position for a petitioner. Indeed, Petitioner's opening brief will need to argue that the 2026 rule causes it (or its members) injury. *See* D.C. Cir. R. 28(a)(7). So it is

unclear how Petitioner can say that abeyance, which would leave the 2026 rule in place, would not prejudice "any party."  Mot. 9.

## IV.    The Court should reject Petitioner's delay tactic.

Beyond these basic flaws in Petitioner's abeyance request, a bigger problem lurks.  Though Petitioner invokes judicial economy and casts its request as a "short delay," the request is not what it seems.  *Id.*  It is instead part of a broader strategy to delay resolution of Clean Air Act challenges.  The Court should reject Petitioner's request.

To begin, this abeyance dispute is not, as Petitioner claims, about judicial economy.  *Id.* at 6.  It is about delaying merits litigation for no real reason.  *See supra* Arg. § II.

And what Petitioner really seeks is anything but a "short abeyance."  Mot. 9. What it really wants is abeyance until EPA finalizes reconsideration of the 2024 rule—even when there is no proposal in sight.  To be sure, it requests, for now, an abeyance of six months or 30 days after EPA proposes action on reconsideration, whichever is sooner.  *Id.*  But consider Petitioner's rationale:  Abeyance would allow the parties to "evaluate whether that broader reconsideration proposal changes or impacts the standards" as amended by the 2026 rule.  *Id.* at 8.  A proposal, however, has no legal impact and cannot alter the 2026 rule.  Only a final rule can do that, and a final rule need not be identical to the proposal.  *See, e.g., In*

10

*re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015); *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079-80 (D.C. Cir. 2009). A proposal, then, would not allow the parties to meaningfully evaluate whether or how EPA's reconsideration would affect the 2026 rule.

So the logic of Petitioner's position—and what it is really asking the Court to sign onto here—dictates that this case should be in abeyance until EPA finalizes reconsideration of the 2024 rule. Petitioner, in short, aims to delay litigation and resolution of this case for much longer than just a few months.

This delay tactic mirrors what Petitioner and other environmental groups have tried recently in other Clean Air Act challenges in this Circuit.[4] The Court should not reward that attempt: If parties choose to sue under a statute that, like the Clean Air Act, favors prompt judicial review, they must be prepared to actually litigate. They should not flood the Court with petitions, only to leave those petitions (and EPA and regulated entities) in limbo based on speculation about what EPA might one day do. *Cf.* Order, *Am. Lung Ass'n v. EPA*, No. 19-1140 (D.C. Cir. Nov. 22, 2019) (denying abeyance motions opposed by EPA); Order,

---

[4] *See Sierra Club v. EPA*, No. 26-1055 (D.C. Cir. May 5, 2026); *Air All. Houston v. EPA*, No. 26-1070 (D.C. Cir. May 18, 2026); *Am. Pub. Health Ass'n v. EPA*, No. 26-1037 (D.C. Cir. Apr. 16, 2026; July 29, 2026). Petitioners in these cases sought abeyance on account of requests for EPA to reconsider the challenged rule. *But see* 42 U.S.C. § 7607(b)(1) (stating that such requests do not make an otherwise final rule unreviewable).

*Union of Concerned Scientists v. NHTSA*, Case No. 19-1230 (D.C. Cir. Feb. 4, 2020) (same).

The two cases cited by Petitioner, rather than support its request, confirm that abeyance is improper. Mot. 6. In *American Petroleum Institute*, after merits briefing, EPA proposed a rule that, if finalized, would amount to a "complete reversal" of the disputed rule and would "likely moot the analysis" presented to the Court. 683 F.3d at 388; *see id.* at 386. Based on these facts—and not speculation about what EPA might propose at some point in the future—the Court deemed the dispute prudentially unripe and put the case in abeyance. *Id.* at 384. In doing so, it noted that (unlike here) there is a definite end to the abeyance period because under a settlement agreement, EPA had to finalize the proposal six months from then. *Id.* at 389. And in *Sierra Club v. EPA*, the Court noted that after already adjudicating other challenges to the disputed rule, it severed two issues—at EPA's request—after the agency had revamped parts of the rule and decided to seek public comment to reconsider the rule once again. 884 F.3d 1185, 1191 (D.C. Cir. 2018). Here, by contrast, Petitioner moves for abeyance of the entire case based on speculation and over EPA's objection.

## Conclusion

Pure speculation about what EPA might do in a future rulemaking cannot justify delaying litigation here—not when the Clean Air Act favors prompt judicial

review and resolution, and not when EPA opposes abeyance.  If Petitioner no longer wishes to litigate the 2026 rule, it is welcome to dismiss its petition.  If it is unwilling to do so, the Court should deny the abeyance motion and order the parties to propose a schedule for merits briefing.

Submitted on August 3, 2026.

Adam R.F. Gustafson
*Principal Deputy Assistant Attorney General*

Robert N. Stander
*Deputy Assistant Attorney General*


    */s/ Sue Chen*
Sue Chen
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
(202) 598-5334
Sue.Chen@usdoj.gov

### Certificates of Compliance and Service

I certify that this motion complies with Fed. R. App. P. 27(d)(1)(E) because it uses 14-point Times New Roman, a proportionally spaced font.

I also certify that this motion complies with Fed. R. App. P. 27(d)(2)(A), because by Microsoft Word's count, it has 2,677 words, excluding the parts exempted under Fed. R. App. P. 32(f).

Finally, I certify that on August 3, 2026, I filed this motion using the Court's CMS/ECF system, which will notify each party.

_/s/ Sue Chen_
Sue Chen

14