# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| ENVIRONMENTAL DEFENSE FUND,<br><br>*Petitioner*,<br><br>v.<br><br>LEE ZELDIN, Administrator, U.S. ENVIRONMENTAL PROTECTION AGENCY, and U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>*Respondents*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 26-1152 |

## REPLY IN SUPPORT OF PETITIONER'S MOTION FOR A LIMITED ABEYANCE

The Court should grant Petitioner's motion to hold this case in abeyance until either 30 days after EPA proposes and notifies the court of its forthcoming action reconsidering the 2024 Rule, or for six months, whichever is sooner. As explained in Petitioner's motion, a time-limited abeyance would facilitate a fair, timely, and efficient adjudication of Petitioner's challenges to EPA's weakening of pollution standards for oil and gas facilities. Mot. 6-9, ECF #2183426.

The April 2026 Reconsideration Rule, 91 Fed. Reg. 18056 (Apr. 9, 2026), weakens vital public health protections, and Petitioner is prepared to prove the

1

Rule's legal deficiencies on the merits and intends to do so. This limited abeyance request is meant to permit the Court and parties to adjudicate and fully resolve overlapping issues in a single proceeding, notwithstanding EPA's effort to obscure the totality of its attack on existing pollution standards from judicial review.

Nowhere in its Opposition does EPA deny that it is undertaking another related reconsideration rule, that that rule's proposal is imminent, or that the rule will address the same issues covered by the April 2026 Reconsideration Rule. Contrary to the Agency's claims, Petitioner's motion rests on concrete, publicly announced EPA actions, not speculation. The Clean Air Act does not prohibit abeyance, EPA's claimed prejudice is illusory, and judicial economy strongly favors a brief pause before proceeding with these challenges.

## ARGUMENT

### I. Petitioner's Abeyance Request Rests on Concrete Agency Commitments, Not Speculation.

EPA argues that the request for a limited abeyance is based on "pure speculation" about what EPA might do in a future rulemaking. Opp. 4, 6, 7, 12, ECF #2186385. But Petitioner is not merely engaging in "guesswork" (Opp. 7) about future Agency action. EPA has repeatedly reaffirmed that a third phase of reconsideration is imminent. In late April 2026, Administrator Zeldin confirmed under oath before Congress that another rulemaking—which he referred to as the "third phase" in a "multiple phased process" of reconsideration—is "about to [be]

2

announce[d]." Mot. 5. EPA has issued a press release about the upcoming rule. Mot. 8. And EPA's own Unified Agenda and Regulatory Plan, published in early July, confirms that the rulemaking is in progress and that the proposal could be released any day. *See* Mot. 7 (noting the Unified Agenda's expected proposal release date as July 2026). Nowhere in the Opposition does EPA disclaim (or even acknowledge) the Unified Agenda's estimation. In fact, EPA's Opposition confirms that the Agency is "hard at work" on the proposal. Opp. 6.

EPA also asserts that it is "[p]ure speculation" that the forthcoming reconsideration proposal will address some of the same issues as the April 2026 Reconsideration Rule. Opp. 7. The April 2026 Reconsideration Rule weakened standards by focusing on two specific issues from the 2024 Rule: (1) temporary flaring exemptions for associated gas, and (2) net heating value monitoring requirements for flares. *See* Mot. 3. Specific, concrete evidence demonstrates likely overlap between these two issues and the forthcoming reconsideration rule. *See* Mot. 7-8. As described and quoted in Petitioner's motion, EPA press releases and Administrator Zeldin's sworn statements made after the release of the April 2026 Reconsideration Rule both state that flaring issues will be addressed in an upcoming rulemaking. *See* Mot. 4, 5, 7-8 nn.3, 5, 8, 9.

Other published EPA documents confirm this overlap. In EPA's April 30, 2026 flaring guidance, EPA states unambiguously that it is "currently developing a

3

proposed rule," and that "[i]n that proposed rule, the EPA intends to raise the issues described above and solicit public comments."[1] The only issues "described" in the memo were the issues related to temporary flaring exemptions—the very issues already covered in the April 2026 Reconsideration Rule challenged here.

Additionally, in a December 2025 final rule (part of the first phase of EPA's "three phase" rulemaking process), 90 Fed. Reg. 55671 (Dec. 3, 2025), EPA delayed compliance with the 2024 Rule's flare monitoring standards, based on industry reconsideration petitions that EPA has committed to substantively address in a third phase. *See* Mot. 7 n.7. All told, EPA will have spread revisions to a single set of flare monitoring requirements across three separate rulemakings within the span of a year, and now wants to force Petitioner to litigate the interrelated issues across separate proceedings.

EPA could have informed the Court that its forthcoming proposal will not concern either or both of the issues addressed in the April 2026 Reconsideration Rule. It did not. EPA should not be permitted to publicly and repeatedly announce a third phase of reconsideration, set a projected proposal date in its Unified Agenda (a date that has now already passed), explicitly state that certain overlapping topics

---

[1] Memorandum from Aaron Szabo, Assistant Adm'r, EPA Off. of Air & Radiation, *Clarification of Regulatory Provisions Concerning Limits on Flaring Associated Gas for New Oil Wells* at 3 (Apr. 30, 2026), https://www.epa.gov/system/files/documents/2026-04/signed_final_o-g-associated-gas-memo_4-30-26_0.pdf.

will be addressed in that reconsideration, and then argue in court that any reliance on those statements is "speculative."

In any event, the Agency cannot reject abeyance here based on supposed uncertainty in what its next action will address. EPA has argued, in at least two of its own recent abeyance motions, that abeyance is warranted because "[i]t is *possible* that after its review" of petitions for reconsideration or of a past administration's rules, "EPA *could* take further action that *may* obviate the need for judicial resolution of *some* or all of the disputed issues." *See* No. 26-1139, ECF #2181453 (July 1, 2026); No. 25-1078, ECF #2105773 (Mar. 14, 2025) (emphasis added). In both cases, this Court granted abeyance.

## II.     The Clean Air Act Does Not Prohibit Abeyance.

EPA suggests that the Clean Air Act's 60-day filing deadline supports denial of the very limited abeyance requested in this case. Opp. 5. But the Act's interest in the prompt and streamlined commencement of challenges says nothing about the separate question of this Court's inherent power to manage its docket, which includes ordering abeyance when appropriate. *See* Mot. 6.

EPA's assertion that a pending reconsideration "cannot derail litigation" (Opp. 6) also misses the mark. The Clean Air Act's direction that a pending reconsideration request "shall not affect the finality" of a rule, 42 U.S.C. § 7607(b)(1), preserves the Court's jurisdiction; it does not strip the Court of its

"traditional equitable authority" to manage its docket in the interest of justice. *See McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013). The Senate Report EPA cites (Opp. 6) explains that while a reconsideration request "does not delay [judicial] review," "courts retain the discretion to stay consideration of the appeal pending reconsideration by EPA." S. Rep. 101-228, 3755 (Dec. 20, 1989). The Act does not prohibit the Court from exercising its discretion to pause proceedings when the equities favor doing so, and this Court regularly exercises its power to temporarily defer judicial review of agency action while an agency is engaged in further administrative proceedings, including in the Clean Air Act context. *See, e.g.*, *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386-90 (D.C. Cir. 2012); *Time Warner Ent. Co., LP v. FCC*, 240 F.3d 1126, 1128 n.1 (D.C. Cir. 2001).[2] The Court has also exercised this power over EPA's opposition.[3]

Indeed, EPA's own actions contradict the Agency's newfound position that abeyance is improper in Clean Air Act cases. *See* Opp. 5-6. EPA has regularly and frequently requested time-limited abeyances in Clean Air Act cases, including to

---

[2] *See also, e.g.*, Order, *Sierra Club v. EPA*, No. 26-1055, ECF #2170287 (Apr. 24, 2026).

[3] *See e.g.*, *Am. Trucking Ass'ns, Inc. v. EPA*, No. 97-1440, 1998 WL 65651, at *1-2 (D.C. Cir. Jan. 21, 1998); *Sierra Club v. EPA*, 551 F.3d 1019, 1023 (D.C. Cir. 2008); *New York v. EPA*, No. 02-1387, 2003 WL 22326398, at *1 (D.C. Cir. Sept. 30, 2003); *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386-87, 389 (D.C. Cir. 2012).

take reconsideration actions.[4] One such motion was filed, and granted, just last month.[5]

### III. EPA's Claimed Prejudice is Illusory and Contradicted by the Record.

EPA claims that abeyance would harm regulated entities by keeping a "cloud of legal uncertainty" over the Rule. Opp. 2. But EPA itself has been the source of uncertainty for months. In July 2025, although many of the standards had been in effect for more than a year, EPA adopted an Interim Final Rule that immediately suspended compliance obligations for certain aspects of the 2024 Rule. 90 Fed. Reg. 35966, 35969-70 (July 31, 2025). And in December 2025, EPA published a final rule affirming the Interim Final Rule's delays and extending them to cover other deadlines. 90 Fed. Reg. at 55674. EPA is now pursuing multiple reconsideration rules on top of those delays. The real source of any uncertainty for regulated entities is EPA's own piecemeal reconsideration process. Resolving any related aspects of reconsideration in one proceeding, as Petitioner's limited abeyance request would enable, is both efficient and promotes certainty.

---

[4] *See, e.g.*, No. 25-1143, ECF#2128844; No. 25-1163, ECF #2148497; No. 25-1078, ECF #2120203; No. 25-1088, ECF #2110677; No. 25-1083, ECF #2110214; No. 25-1080, ECF #2111035; No. 20-1149, ECF #1845595; No. 20-1381, ECF #1867743; No. 20-1354, ECF #1865335.
[5] No. 26-1139, ECF# 2181453 (filed July 1, 2026); Order, No. 26-1139, ECF #2181842 (July 6, 2026) (granting abeyance).

EPA also wrongly claims that a limited abeyance would result in compliance burdens for regulated entities. Opp. 8. However, the rule Petitioner challenges—which remains in effect—*weakened* applicable emission standards. Briefly deferring this Court's review of that action would, if anything, work to delay regulated entities' obligation to comply with stronger standards.[6]

Finally, EPA's argument that it is "an unusual position for a petitioner" (Opp. 9) to support abeyance mischaracterizes Petitioner's position. Petitioner is not claiming that the April 2026 Reconsideration Rule causes no harm or that litigation can be deferred indefinitely. EPA's own analysis acknowledges that the Rule's weakened standards will increase harmful methane and volatile organic compound emissions. *See* Mot. 4-5; 91 Fed. Reg. at 18091. A short delay in litigation does not negate the real, substantive health and environmental harms that Petitioner's challenge will address. But under these circumstances, deferring adjudication until the full scope of EPA's regulatory changes to the 2024 Rule is known is necessary to prevent duplicative litigation and ensure that EPA's piecemeal approach does not obscure the cumulative public health consequences of the Agency's attack on the 2024 Rule's standards.

---

[6] EPA similarly fails to explain how its desire to "clear[ ] its name now" (Opp. 9) is a cognizable factor in the abeyance analysis.

## IV. Judicial Economy Strongly Favors Abeyance.

EPA's Opposition fundamentally mischaracterizes Petitioner's motion as a "delay tactic" (Opp. 10). Much to the contrary, Petitioner has been actively litigating the reconsideration across all phases, including to expedite the litigation.[7]

EPA is also wrong that Petitioner's request is "part of a broader strategy by Petitioner and its allies to delay litigation over Clean Air Act rules." Opp. 1. Petitioner has no interest in allowing unlawful, unprotective emission standards to remain in place. It is EPA's own deviation from norms of administrative practice—here, a staged reconsideration process to steadily weaken pollution standards—that has occasioned the need for this Court's intervention in multiple cases.

Recent abeyance requests by Petitioner and other environmental groups have been necessitated by this Administration's systematic effort to finalize deregulatory rules without a full and lawful public process: issuing final rules that rely on new arguments and analysis that were never presented to the public, and then effectively shielding those critical conclusions from judicial review by delaying Agency action on attendant petitions for administrative reconsideration. *See* 42 U.S.C. § 7607(d)(7)(B). In the three recent cases EPA cites as evidence of Petitioner's purported delay "strategy" (Opp. 11 n.4), Petitioner (along with others)

---

[7] *See* No. 25-1275, *Motion for Summary Vacatur or, in the Alternative, for Expedited Briefing and Oral Argument*, ECF #2151923 (Dec. 23, 2025).

sought limited-term abeyances to allow EPA to complete reconsideration proceedings and to ensure, in turn, that the Agency's bases for its deregulatory actions can be fairly, fully, and immediately adjudicated—not buried in an administrative shell game. This Court has already found abeyance to be appropriate in one of those three cases. *See* Order, *Sierra Club v. EPA*, No. 26-1055, ECF #2184077 (D.C. Cir. July 20, 2026) (granting petitioners' request to hold case in abeyance for approximately 6 months so that EPA may act on a pending petition for administrative reconsideration).

Abeyance requests in those cases—as in this one—have not sought delay for its own sake, but rather because a limited delay ensures EPA's actions are appropriately subject to judicial review. And in each case, the brief abeyance requested is in service of efficient and timely review. Under those circumstances, petitioners seeking limited abeyances are responding rationally, not engaging in gamesmanship.

Finally, EPA's assertion that Petitioner seeks an indefinite delay (Opp. 10-11) is also wrong. Petitioner's request—which has a six-month cap (Mot. 1)—is narrowly tailored and focused on litigating the rollback of these important health protections in a fair, complete, and efficient manner. As Petitioner made clear in our request, if EPA's next reconsideration rule does not concern the same issues as

the April 2026 Reconsideration Rule, Petitioner is prepared to move forward expeditiously.

## CONCLUSION

For the above reasons and those in Petitioner's motion, Petitioner's motion should be granted.

DATED: August 10, 2026

Respectfully submitted,

*/s/ Keri R. Davidson*
Rosalie Winn
Grace Smith
Leah Fattor
Peter Zalzal
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
(303) 447-7212
rwinn@edf.org
gsmith@edf.org
lfattor@edf.org
pzalzal@edf.org

Sean Donahue
Keri R. Davidson
Donahue, Goldberg, Herzog & Davidson
1008 Pennsylvania Ave. SE
Washington, DC 20003
(202) 277-7085
sean@donahuegoldberg.com
keri@donahuegoldberg.com

*Counsel for Environmental Defense Fund*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that on this 10th day of August 2026, that the foregoing Reply in Support of Petitioner's Motion for Limited Abeyance contains 2,222 words and was composed in Times New Roman font, 14-point. The motion complies with all applicable type-volume and typeface requirements.

*/s/ Keri R. Davidson*
Keri R. Davidson

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August 2026, I have served the foregoing Reply in Support of Petitioner's Motion for Limited Abeyance on registered counsel through the court's electronic filing system (ECF).

*/s/ Keri R. Davidson*
Keri R. Davidson